**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES MITCHELL,

      Petitioner,

v.                               Case No. 8:20-cv-1214-CEH-MRM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

**<u>ORDER</u>**

James Mitchell, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent filed a response opposing the petition. (Doc. 7.) Mitchell filed a reply. (Doc. 10.) Upon consideration, the petition will be **DENIED**.

## I.    Procedural History

A state-court jury convicted Mitchell of robbery with a weapon and battery on a victim over sixty-five. (Doc. 7-2, Ex. 4.) After finding that he qualified as a habitual felony offender and a prison releasee reoffender, the state trial court sentenced Mitchell to concurrent terms of life imprisonment on the robbery count and five years' imprisonment on the battery count. (*Id.*, Ex. 5.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 7.) Mitchell then sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 9, 10.)

1

The state trial court denied Mitchell's claims, and the state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Exs. 11, 13.) This federal habeas petition followed. (Doc. 1.)

## II.    Facts; Trial Testimony[1]

On March 15, 2016, Charles Bean was working as a security guard at the Tampa Wholesale Produce Market. Bean was seventy years old at the time, and he worked out of a "guard shack" in the market. (Doc. 7-3, Ex. 15, pp. 173-74.) For several years, Bean had sporadically bought items from Mitchell, who would visit Bean while he was working at the market. Bean also occasionally gave Mitchell gas money when he was "in a bind." (*Id.*, p. 177.)

Bean testified that, on the morning of March 15, Mitchell visited him in the guard shack and asked if he was "interested in" buying an air compressor. (*Id.*, p. 178.) Bean said he was, and Mitchell left to retrieve the item. Approximately forty-five minutes later, Mitchell returned to the guard shack with the compressor. Bean told Mitchell to put the item in the back of his truck; Mitchell complied. Bean then removed a "white envelope" from an inside pocket of his jacket, which was hanging on a nail by the doorway. (*Id.*, pp. 179, 181.) Bean took $30 from the envelope and gave it to Mitchell. Bean testified that he also asked whether Mitchell could find a "sander," but the two did not agree on a price at the time. (*Id.*, pp. 179-80.) Mitchell left, and Bean did not expect him to return that day.

---

[1] This summary is based on the trial transcript.

Later that morning, Bean saw Mitchell walk toward the guard shack, then turn around and leave. Bean testified that, shortly thereafter, Mitchell entered the guard shack and immediately began hitting him over the head with a "piece of wood." (*Id.*, pp. 181-82.) The stick was approximately one to two feet long and "four to five inches across." (*Id.*, p. 184.) Bean was sitting down during the attack, and he did not see Mitchell "prior to him coming through the doorway." (*Id.*, p. 181.)

Once the attack ended and Bean was able to get up, he ran to a gas station for help. Mitchell left the shack carrying Bean's jacket, which contained an envelope with $240 in cash. Bean was ultimately taken to a hospital where he received fourteen "staples in three different places." (*Id.*, p. 198.) The top of Bean's head was "permanently scarr[ed]," and his arm was "swollen three times what it normally [was]." (*Id.*)

Robert Boehm, a customer at the market, witnessed the attack. At the time, he was parked in his truck approximately fifteen feet from the guard shack. Boehm testified that he looked through the shack's glass door and saw Mitchell "hitting [Bean] in the head" with a "big stick." (*Id.*, pp. 263-65.) After the attack, Boehm observed Mitchell "going through some pockets" of a "dark colored sweater," which Boehm subsequently identified as Bean's jacket. (*Id.*, pp. 266-67.) Boehm followed Mitchell in his truck as the latter fled on foot. He saw Mitchell throw the jacket on the ground and jump a fence. At this point, law enforcement apprehended Mitchell, recovering $240 in cash from his "front left pocket." (*Id.*, p. 254.)

Mitchell testified at trial and offered a different account of the incident. He claimed that, on the morning of March 15, he sold Bean an air compressor for $20. According to Mitchell, Bean paid him by removing the cash from his pants pocket. As Mitchell was getting ready to leave, Bean asked whether Mitchell could "get [him] a four[-]inch belt sander." (*Id.*, p. 292.) Mitchell said he would need "another $30" to obtain the item. (*Id.*) Bean agreed and gave Mitchell the cash from his pants pocket. Mitchell then left the shack.

Mitchell testified that, later that morning, he returned to the market to tell Bean that he "was not able to keep [his] end of the bargain." (*Id.*, p. 295.) According to Mitchell, he had taken Bean's money and "got[ten] high with it." (*Id.*, p. 296.) As Mitchell approached the guard shack, he noticed that "another guy" was there with Bean. (*Id.*, p. 297.) Mitchell turned around, walked back down the street, and waited for the person to leave.

When Mitchell returned approximately five minutes later, Bean was alone in the shack. Mitchell testified that he entered the shack and set his bag down. Bean picked the bag up and said, "[T]his feels a little light to have a sander in there." (*Id.*, p. 298.) Mitchell testified that, when he told Bean he had used the money to get high, Bean got "really upset" and began attacking him "out of nowhere." (*Id.*, p. 299.) According to Mitchell, Bean jumped up and tried to wrap his arms around Mitchell's neck. Mitchell claimed he "look[ed] around," saw "an old stick on the ground," and picked it up. (*Id.*, p. 300.) Mitchell then hit Bean on the head with the stick to "protect [himself]." (*Id.*) When Bean left the shack "hollering [for] help," Mitchell took the

4

jacket to "cover [his] appearance to look different." (*Id.*, p. 304.) As he was walking through the parking lot, Mitchell claimed he "felt something in the [jacket] pockets." (*Id.*, p. 305.) He pulled out an envelope containing $240 in cash, took the money, and decided he could not "keep [the] jacket anymore." (*Id.*) Mitchell therefore "threw the jacket on the ground" and "jumped across the fence to try to get away." (*Id.*)

On cross examination, Mitchell admitted that he did not receive any injuries "from being inside of the guard shack with" Bean. (*Id.*, p. 315.) Asked why he ran from the scene if he was "defending [himself]," Mitchell claimed that he "panicked." (*Id.*, p. 313.) Mitchell also acknowledged that he had been convicted of "[e]leven felonies and seven crimes of dishonesty." (*Id.*, p. 309.)

## III.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the

6

summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327

(1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mitchell alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mitchell must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mitchell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt"). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## IV.   Discussion

### A.   Ground One

Mitchell contends that trial counsel provided ineffective assistance because she was unable to play certain surveillance footage for the jury during closing argument. According to Mitchell, the footage showed that he was not "armed with a weapon" when he entered the guard shack. (Doc. 10, p. 2.) Mitchell argues that, had the jury seen this footage during closing argument, it "would have had all [the] facts and evidence to fairly deliberate upon." (*Id.*, p. 3.)

The state court denied this claim as follows:

> In claim one, Defendant alleges ineffective assistance of counsel for failing to show a surveillance video to the jury during closing arguments. Defendant alleges the video showed him entering the guard shack (where the victim was located) without any kind of weapon—namely, a large stick. Defendant alleges counsel did not show the surveillance video because "she could not get the video to work properly at that moment." He alleges if it had been pointed out to the jury that he was unarmed, it would have removed "the theory of 'intent to commit to robbery' or any other premeditated act" and would have removed "the allegation of battery on a person 65 years of age or older." Defendant contends that but for counsel's deficient performance, there is a reasonable probability the outcome of the trial would have been different.
>
> The Court finds claim one to be refuted by the record. The record reflects that although counsel did not play this portion of the video, counsel expressly argued that the video clearly showed Defendant did not have anything in his hands when he entered the guard shack. Counsel instructed the jury it would have the video [and] to "watch it, and watch it, and watch it," but counsel was not playing the video for the jurors at that time. The record further reflects that counsel argued Defendant had no intention of engaging in "any altercation" with the victim when he entered the guard shack. Thus, in light of the fact that counsel made the argument that Defendant is suggesting and because the jury was instructed it would have the video to watch, the Court finds the record refutes Defendant's claims of deficient performance and prejudice. Accordingly, relief is not warranted on claim one.

(Doc. 7-2, Ex. 11, pp. 2-3 (record citations omitted).)

The state court reasonably rejected Mitchell's ineffective-assistance claim. The prosecution introduced the surveillance footage into evidence over Mitchell's objection. (Doc. 7-3, Ex. 15, pp. 187-89.) The prosecution then reviewed the footage with Bean on direct examination. (*Id.*, pp. 189-95.) During closing argument, Mitchell's counsel played a portion of the footage that showed Mitchell walking into the guard shack. Counsel argued that, contrary to Bean's description of the incident,

Mitchell was not "swinging anything" in the video. (*Id.*, p. 353.) Counsel then pointed out that another part of the footage, taken from a different angle, also showed Mitchell on his "walk up" to the shack. (*Id.*) Counsel claimed that in this video, Mitchell had "nothing in his hands." (*Id.*) Although counsel was ultimately unable to play this bit of footage, she described it to the jury and urged them to watch it: "[W]hat you will see is Mr. Mitchell when he walks up. And you can watch it, and watch it, and watch it. He does not have any stick in his hand when he approaches. That is because when Mr. Mitchell goes to that guard shack he has no intentions of having any altercation with Mr. Bean." (*Id.*, pp. 353-54.)

Following closing arguments, the trial court instructed the jury that all exhibits entered into evidence would "be sent into [] the jury room when you begin to deliberate." (*Id.*, p. 386.) The court also noted that the jury could "examine whatever exhibits you think will be helpful in your deliberations." (*Id.*) Notably, during sentencing, Mitchell's counsel pointed out that, according to the courtroom deputy, the jury had "asked for both videos" when they "went back to deliberate." (*Id.*, Ex. 17, pp. 7-8.)

Faced with this evidence, the state court reasonably concluded that counsel's failure to play a portion of the surveillance footage during closing argument did not render her performance constitutionally deficient. *See Strickland*, 466 U.S. at 690 (noting that "counsel is strongly presumed to have rendered adequate assistance"). Furthermore, the state court reasonably found that Mitchell was not prejudiced by this technical mishap. As the state court correctly noted, the footage was available to the

11

jury during its deliberations, and Mitchell's counsel offered her exculpatory interpretation of the video during closing argument. Mitchell thus failed to establish a "reasonable probability that, but for counsel's [failure to play the footage during closing argument], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014); *see also Strickland*, 466 U.S. at 693 ("It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding.").

In short, Mitchell has not shown that the state court's rejection of his ineffective-assistance claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Thus, he is not entitled to relief on Ground One.

## B.   Ground Two

Mitchell contends that trial counsel rendered ineffective assistance because she failed to impeach Bean with his "prior inconsistent statements" to law enforcement. (Doc. 1, p. 7.) According to Mitchell, Bean told law enforcement that "he did not see [Mitchell] bring a stick into [the] guard shack." (Doc. 10, p. 5.) Mitchell argues that Bean told a "complete[ly] different tale[]" at trial, and that counsel was ineffective for failing to impeach Bean on this basis. (Doc. 1, p. 7.)

The state court denied this claim as follows:

In claim two, Defendant alleges ineffective assistance of counsel for failing to impeach the victim, Charles Bean. Defendant alleges Mr. Bean told law enforcement officers during the initial investigation that he did not see Defendant enter the guard shack carrying a large stick. Defendant alleges Mr. Bean testified inconsistently at trial, and identified the inconsistencies as follows: (1) on page 192 of the trial transcript Mr. Bean testified Defendant brought the stick with him, (2) on page 193 of the trial

12

transcript Defendant alleges Mr. Bean testified Defendant only had a blue bag with him, (3) on page 203 of the trial transcript Defendant alleges Mr. Bean admitted a struggle took place, (4) on page 222 of the trial transcript Defendant alleges Mr. Bean testified Defendant came in swinging, (5) on page 222 of the trial transcript Defendant alleges Mr. Bean testified both that Mr. Bean did not see Defendant enter with a stick and that the stick came in when Defendant came in, (6) on page 223 of the trial transcript Defendant alleges Mr. Bean testified Mr. Bean was sitting down the whole time, and (7) on page 225 of the trial transcript Defendant alleges Mr. Bean testified he did not see Defendant move Mr. Bean's coat. Defendant contends Mr. Bean's trial testimony was inconsistent with his statements to law enforcement officers and but for counsel's deficient performance the outcome of the proceedings would have been different.

The Court finds claim two to be without merit. The record reflects that— consistent with what Defendant alleges Mr. Bean told officers during the initial investigation—Mr. Bean never testified he saw Defendant enter the guard house with a stick. Upon review of the entirety of Mr. Bean's testimony on direct examination and cross-examination, the Court finds Mr. Bean's testimony to be substantively internally consistent and consistent with his statement to law enforcement officers. In particular, the Court finds Mr. Bean essentially testified that he did not see Defendant holding the stick because Mr. Bean was immediately defending himself against being hit with a stick upon Defendant's entry into the guard house. The Court does not find Mr. Bean's testimony that Defendant had to have brought the stick with him because there was not a stick in the guard house to be inconsistent with Mr. Bean's prior statement that he did not see Defendant carry the stick. Likewise, the Court finds nothing inconsistent with either the State's or Mr. Bean's characterization of the event as a struggle even though Mr. Bean claimed he was seated during the event, especially in light of Mr. Bean's testimony that he was defending himself. With regard to whether or not Mr. Bean saw Defendant move Mr. Bean's jacket, Defendant took the stand and testified he took Mr. Bean's jacket as he was leaving in order to disguise his appearance. Mr. Bean testified he did not know if Defendant took the coat because he "was more concerned with being hit than [he] was looking at [his] jacket." Thus, in light of Defendant's testimony that he took the coat and Mr. Bean's inconclusive response as [to] whether Defendant took the coat, the Court finds the outcome of trial would not have been different had counsel questioned Mr. Bean about whether he told an officer he saw Defendant grab his coat and leave. Consequently, for all of the above reasons, the Court finds Defendant has

not established deficient performance or prejudice. Accordingly, relief is
not warranted on claim two.

(Doc. 7-2, Ex. 11, pp. 3-5 (record citations omitted).)

The state court reasonably rejected Mitchell's ineffective-assistance claim.
According to Mitchell, Bean told law enforcement that he did not see Mitchell enter
the guard shack with a stick. As the state court correctly noted, Bean's trial testimony
was consistent with this statement. Contrary to Mitchell's assertion, Bean did not
testify at trial that he saw Mitchell enter the shack with a stick. Instead, Bean claimed
that he "first saw" Mitchell "when [Mitchell] was hitting him." (Doc. 7-3, Ex. 15, p.
181.) Bean elaborated that "all [he] saw was a stick coming down on [his] head," and
that he "had no time to see nothing but defense." (*Id.*, pp. 221-22.) Bean also testified
that, although he "did not see a stick in [Mitchell's] hand" when Mitchell entered, the
stick "came in" when Mitchell "came in." (*Id.*, p. 222.) Thus, as the state court noted,
Bean essentially testified that "he did not see [Mitchell] holding the stick because [he]
was immediately defending himself against being hit with a stick upon [Mitchell]'s
entry into the guard house." (Doc. 7-2, Ex. 11, p. 4.) Because this testimony was
consistent with Bean's prior statement to law enforcement, counsel was not ineffective
for failing to impeach him with it. *See, e.g.*, *Rivera v. McNeil*, No. 07-22633-CIV, 2009
WL 4277235, at *11 (S.D. Fla. Nov. 30, 2009) ("Counsel [was] not ineffective for
failing to impeach [a prosecution witness] with a prior inconsistent statement because
[his] trial testimony and the 911 tape are consistent.").

14

Likewise, the state court correctly concluded that habeas relief was not warranted based on the other alleged inconsistencies in Bean's testimony. For example, there is no inconsistency between Bean's description of the encounter as a "struggle" and his testimony that he was sitting down during the incident. (Doc. 7-3, Ex. 15, pp. 203, 223.) Additionally, in his postconviction motion, Mitchell claimed Bean told law enforcement that "Mitchell grabbed his jacket that was hanging on a nail and then fled on foot." (Doc. 7-2, Ex. 10, p. 4.) According to Mitchell, this statement was inconsistent with Bean's trial testimony that he did not see Mitchell take the jacket. Even assuming that the testimony was inconsistent, Mitchell cannot show that "counsel was deficient for failing to impeach [Bean] on minor inconsistencies that did not completely contradict [his] trial testimony and could easily be attributed to the lapse of time or differences in the manner []he was questioned and recounted the events." *Wilson v. Sec'y, Dep't of Corr.*, No. 6:10-cv-422-CEH-KRS, 2013 WL 1499549, at *7 (M.D. Fla. Apr. 12, 2013).[2]

Accordingly, Mitchell has not shown that the state court's rejection of his ineffective-assistance claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Thus, he is not entitled to relief on Ground Two.

---

[2] During the prosecution's case, Bean was shown surveillance footage that depicted Mitchell walking up to the guard shack. Commenting on one part of the footage, Bean testified that "[t]his is when [Mitchell] walked up with nothing but his own bag I believe." (Doc. 7-3, Ex. 15, p. 193.) Contrary to Mitchell's assertion, this testimony is consistent with Bean's statement that Mitchell brought the stick to the shack. Context makes clear that, when he noted that Mitchell was approaching with "nothing but his own bag," Bean was simply describing what he saw on the surveillance footage. (*Id.*)

## C.    Ground Three

Mitchell contends that trial counsel was ineffective for failing to impeach state witness Robert Boehm with prior inconsistent statements. In his state postconviction motion, Mitchell argued that Boehm did not tell law enforcement that he had seen Mitchell hit Bean or "go through any kind of jacket pockets." (Doc. 7-2, Ex. 10, p. 4.) According to Mitchell, however, Boehm testified at trial that he saw Mitchell hit Bean in the head and "go through the jacket pockets." (*Id.*) Mitchell claimed that, had counsel impeached Boehm with his prior inconsistent statements, there was a reasonable probability that the outcome at trial would have been different.

The state court denied this claim as follows:

> In claim three, Defendant alleges ineffective assistance of counsel for failing to impeach witness Robert Boehm. Defendant alleges that Mr. Boehm testified at trial he witnessed Defendant hit the victim twice and witnessed Defendant go through the pockets of a jacket, but alleges Mr. Boehm's statement to law enforcement officers makes no mention of him seeing Defendant hit the victim or seeing Defendant going through the pockets of a jacket. Defendant contends that but for counsel's failure to impeach Mr. Boehm with his prior inconsistent statements, the outcome of the proceedings would have been different as the Court would have granted a judgment of acquittal. Inexplicably, however, Defendant cites the portions of the trial transcript where counsel *did* cross-examin[e] Mr. Boehm about the inconsistencies between his statement to law enforcement and his trial testimony.
>
> The Court finds claim three to be without merit. As acknowledged by Defendant, the record reflects counsel did impeach Mr. Boehm about the fact that his statement to law enforcement made no mention of seeing Defendant hit the victim or rifle through the pockets of a jacket. As such, the record refutes Defendant's claim of deficient conduct. Accordingly, relief is not warranted on claim three.

(Doc. 7-2, Ex. 11, p. 5 (record citations omitted).)

The state court reasonably rejected Mitchell's ineffective-assistance claim. As the state court correctly recounted, trial counsel impeached Boehm with the prior inconsistent statements Mitchell identifies. Specifically, counsel asked Boehm: "And in your written statement you don't indicate at all ever seeing the suspect hit Mr. Bean, isn't that correct?" (Doc. 7-3, Ex. 15, p. 274.) Boehm responded that it was "not in the statement, no." (*Id.*) Counsel then asked Boehm: "Now, also you don't indicate at all in your written sworn statement that you saw the suspect go through any kind of pockets, any kind of jacket pockets, isn't that correct?" (*Id.*, p. 275.) Boehm answered, "Yes." (*Id.*)

Because the record establishes that counsel impeached Boehm with his prior inconsistent statements, the state court correctly applied *Strickland* in rejecting Mitchell's ineffective-assistance claim. Thus, Mitchell is not entitled to relief on Ground Three.

### D.    Ground Four

Mitchell argues that trial counsel rendered ineffective assistance because she failed "to object to the finding of guilt in this case being based on improper stacking of" inferences. (Doc. 1, p. 10.) According to Mitchell, counsel should have objected because the prosecution "pyramided untrue facts and evidence to the court."[3] (*Id.*)

---

[3] Under Florida law, "[a]n impermissible pyramiding of inferences occurs where at least two inferences in regard to the existence of a criminal act must be drawn from the evidence and then stacked to prove the crime charged; in that scenario, it is said that the evidence lacks the conclusive nature to support a conviction." *Graham v. State*, 748 So. 2d 1071, 1072 (Fla. 4th DCA 1999).

Respondent contends that Mitchell failed to exhaust this claim because he did not raise it when he appealed the denial of his Rule 3.850 postconviction motion. The Court disagrees. Mitchell raised Ground Four in his postconviction motion. (Doc. 7-2, Ex. 10, pp. 5-6.) The state court denied relief without holding an evidentiary hearing on any of the claims, and Mitchell appealed. (*Id.*, Exs. 11, 12.) Respondent is correct that, in his appellate brief, Mitchell did not argue that trial counsel was ineffective for failing to object to the prosecution's alleged stacking of inferences. (Doc. 7-3, Ex. 18.) It does not follow, however, that Mitchell failed to exhaust this claim. "[A]lthough [Mitchell] filed a *pro se* brief on appeal, he was not required to file an appellate brief because the postconviction court summarily denied his Rule 3.850 motion without an evidentiary hearing." *Smith v. Sec'y, Fla. Dep't of Corr.*, No. 3:20-cv-170-MMH-MCR, 2022 WL 16923699, at *6 (M.D. Fla. Nov. 14, 2022) (citing Fla. R. App. P. 9.141(b)(2)(C)(i)). Furthermore, Mitchell's decision to file an appellate brief and "to address only some of the issues [did] not waive the remaining issues raised in his Rule 3.850 motion." *Cortes v. Gladish*, 216 F. App'x 897, 899 (11th Cir. 2007). Accordingly, Mitchell properly exhausted Ground Four despite his failure to raise the issue on appeal.

Nevertheless, Mitchell is not entitled to relief. The state court denied Mitchell's ineffective-assistance claim as follows:

> In claim four, Defendant alleges ineffective assistance of counsel for "failing to object to the finding of guilt in this case being based on improper stacking of influence (sic)." Defendant cites to numerous statements made by the State during its closing argument and argues that the State failed to prove he entered the guard house armed with a tree

branch. Citing, in part, to *Rocker v. State*, 122 So. 3d 898 (Fla. 2d DCA 2013), Defendant alleges counsel should have argued "insufficiency of evidence based on improper pyramiding of evidence." Defendant contends that but for counsel's failure to object on an insufficient evidence basis, there is a reasonable probability the outcome would have been different.

The Court finds claim four to be without merit. Defendant testified that he defended himself after Mr. Bean attacked him. The State presented contrary evidence that Defendant was the attacker—namely, the victim's testimony that Defendant entered the guard house swinging. Thus, the Court finds that unlike the situation presented in *Rocker*, 122 So. 3d 898, there was no "impermissible stacking of inferences." *See id.* at 905 ("Based on the foregoing review of the evidence, which was purely circumstantial, we find that the State did not present facts inconsistent with Rocker's reasonable hypothesis of innocence. The state failed to present any evidence indicating Rocker's intent. Therefore, to reach the conclusion that the evidence was sufficient to support Rocker's conviction as a principal would require an impermissible stacking of inferences."). Thus, the Court finds the record refutes Defendant's assertion that counsel acted deficiently for failing to object to insufficient evidence or impermissible stacking. Accordingly, relief is not warranted on claim four.

(Doc. 7-2, Ex. 10, p. 6 (record citations omitted).)

The state court reasonably rejected Mitchell's ineffective-assistance claim. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y*, *DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, the state court found that trial counsel was not ineffective because, under Florida law, the prosecution did not impermissibly stack inferences in presenting its case. (Doc. 7-2, Ex. 10, p. 6.) "The state court therefore has answered the question of what would have happened had counsel objected to [the allegedly improper stacking of inferences]—the objection would have been overruled."

*Block v. Sec'y, Dep't of Corr.*, No. 8:15-cv-2442-CEH-JSS, 2019 WL 700113, at *8 (M.D. Fla. Feb. 20, 2019); *see also Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [counsel] done what [the appellant] argues he should have done. . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal courts should not second-guess them on such matters."); *Files v. Tucker*, No. 3:09-cv-490-RV-EMT, 2011 WL 6983135, at *29 (N.D. Fla. Dec. 9, 2011) ("In light of the state court's determination that defense counsel had no basis for arguing a violation of state law, a determination to which this court must defer, Petitioner failed to show deficient performance based upon counsel's failure to argue that an impermissible stacking of inferences occurred."), *adopted by* 2012 WL 83369 (N.D. Fla. Jan. 11, 2012).

Accordingly, Mitchell has not shown that the state court's rejection of his ineffective-assistance claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. For that reason, Mitchell is not entitled to relief on Ground Four.

### E.    Ground Five

Finally, Mitchell seeks habeas relief based on the "cumulative effect" of the errors allegedly committed by trial counsel. (Doc. 1, p. 11.) Mitchell raised this claim in his postconviction motion, and the state court denied relief on the grounds that cumulative error does not exist where, as here, there are no "individual instance[s] of error." (Doc. 7-2, Ex. 10, p. 6; Doc. 7-2, Ex. 11, p. 6.) Although Mitchell appealed the

denial of his postconviction motion, he did not argue cumulative error in his appellate brief. (Doc. 7-3, Ex. 18.) Respondent argues that Mitchell's failure to brief the issue on appeal renders Ground Five unexhausted. For the reasons explained above in connection with Ground Four, the Court concludes that Mitchell properly exhausted Ground Five despite his failure to raise the issue in his appellate brief.

Nevertheless, Mitchell is not entitled to relief. "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, there are no individual errors to accumulate, so Mitchell's cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, No. 8:19-cv-39-SDM-AEP, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, [petitioner] proves no error to accumulate to show cumulative prejudicial effect."). Thus, because the state court reasonably rejected Mitchell's cumulative-error claim, he is not entitled to relief on Ground Five.

It is therefore **ORDERED** that Mitchell's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Mitchell and to **CLOSE** this case.

**Certificate of Appealability**
**and Leave to Appeal *In Forma Pauperis* Denied**

It is further **ORDERED** that Mitchell is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a certificate of appealability must first issue. *Id.* "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Mitchell must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mitchell has not made the requisite showing. Finally, because Mitchell is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida, on May 23, 2023.

Charlene Edwards Honeywell
United States District Judge

22